UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

```
JANE DOE-1, by her Parents      )
and Next Friends, JOHN DOE-1,   )
and JULIE DOE-1, and            )
JOHN DOE-1 and JULIE            )
DOE-1,                          )
                                )
         Plaintiffs,            )
                                )
    v.                          )    Case No. 03-1107
                                )
GERALD SCOTT HUDDLESTON, ET AL,)
                                )
         Defendants.            )
```

## **O R D E R**

Before the Court are Defendant Gerald Huddleston's Motion for Summary Judgment [Doc. # 213], Motion to Strike the Affidavit of Annette Hale [Doc. # 238]; and Motion to Strike Certain Paragraphs of the Affidavit of Jenna Hale [Doc. # 240].  For the reasons that follow, the motion for summary judgment will be granted in part, and the motions to strike will be denied as moot.

**I.  Background**

The following facts are undisputed.  During the time relevant to this case, Defendant Huddleston was employed as an art teacher by Defendant Prairie Central School District No. 8 Board of Education ("PCSD").  As part of his employment during the 2001-2002 school year, Huddleston taught art to first grade students at Westview Elementary School in Fairbury, Illinois two times per week.  Plaintiff Jane Doe-1 ("Jane") was one of his students that year.

Huddleston placed photographs of his students around the door

frame of his classroom at Westview when they were given to him. During the school year, Huddleston acquired a picture of Jane that had been cut into the shape of a heart and he displayed it on his door frame with the other student pictures. During one class, after Huddleston showed Jane's class a "well-done" picture she had drawn, Jane became embarrassed and blushed. Later, Huddleston told Jane's classmates that he could make her blush again; he then stated that Jane was his girlfriend. Huddleston testified that this was an isolated incident that was meant as a joke. However, a classmate of Jane's attested that Huddleston said Jane was his girlfriend "almost every time [they] went to art class." Other children teased Jane about being Huddleston's girlfriend.

During the 2001-2002 school year, Jane suffered from distress and anxiety with physical manifestations of crying, vomiting and bed-wetting. She did not want to attend Westview, and was eventually removed and home-schooled. Jane's parents, John and Julie Doe-1, have brought this suit on her behalf, naming themselves as individual Plaintiffs.

## II.  Legal Standard

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

### III. Analysis

Plaintiffs have dismissed all but two of their claims against Huddleston. Remaining are a section 1983 claim and an intentional infliction of emotional distress claim. As discussed below, the Court will grant Huddleston's motion as to the section 1983 claim, however, the Court will decline supplemental jurisdiction over the

intentional infliction of emotional distress claim because of the novelty of the issues involved.

### A. Section 1983 Claim

The Complaint alleges Huddleston violated Jane, Julie, and John Doe's constitutional rights to due process and equal protection. Huddleston has moved for summary judgment, arguing, *inter alia,* that Plaintiffs can not show a constitutional violation. In response, Plaintiffs have only addressed Jane's constitutional right to equal protection. Accordingly, the Court finds that summary judgment in favor of Huddleston as to John and Julie Doe-1's section 1983 claims as well as any claims by Jane Doe based on a violation of her due process rights is appropriate. Cf. Reidt v. County of Trempealeau, 975 F.2d 1336, 1341 (7th Cir. 1992)(plaintiff who failed to develop a claim in the district court waived it). Thus, the Court will only address the claimed violations of Jane's right to equal protection.

The Seventh Circuit has found that sexual harassment can constitute sexual discrimination in violation of the Equal Protection clause of the Fourteenth Amendment. Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1185 (7th Cir. 1986). Bohen involved harassment of a female employee working for a state employer. Even so, the Bohen court recognized that sexual harassment in the context of an Equal Protection violation differs from the inquiry in Title VII employment discrimination cases in that the "ultimate inquiry" in an Equal Protection claim is "whether the sexual harassment constitutes intentional discrimination." In Nabozny v. Podlesny, 92 F.3d 446 (7th Cir.

1996), the Seventh Circuit again recognized that "[t]he gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action." Id. at 453. In Nabozny, the Seventh Circuit found the district court had erred in granting summary judgment to the defendant school district where a material issue of disputed fact existed as to whether a homosexual male student's complaints of harassment were treated differently from female student complaints.

The jurisprudence as to what constitutes actionable sexual harassment in an education environment under the Equal Protection clause is very limited. The few cases that exist have only limited usefulness as the facts of those cases are easily distinguishable from the facts here. The Court finds guidance, however, in Title IX jurisprudence.[1]

In Davis v. Monroe County Bd. of Educ., 526 U.S. 629 (1999), the Supreme Court held that the plaintiff had stated a claim for sexual harassment under Title IX where the student had been subjected to a prolonged pattern of conduct including vulgar propositions and numerous acts of objectively offensive touching by a fellow student. In Davis, the Supreme Court stated:

> [A] plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's

---

[1] Title IX provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

> resources and opportunities. Cf. Meritor Savings Bank, FSB v. Vinson, 477 U.S., at 67, 106 S.Ct. 2399.
>
> Whether gender-oriented conduct rises to the level of actionable "harassment" thus "depends on a constellation of surrounding circumstances, expectations, and relationships," Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), including, but not limited to, the ages of the harasser and the victim and the number of individuals involved. . . . Courts, moreover, must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. See, e.g., Brief for National School Boards Association et al. as Amici Curiae 11 (describing "dizzying array of immature … behaviors by students"). Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.

Davis, 526 U.S. at 652.

In Hawkins v. Sarasota County School Board, 322 F.3d 1279 (11th Cir. 2003), parents of three second-grade students brought a Title IX action for alleged sexual harassment by a male classmate. The classmate was accused of making persistent sexually explicit and vulgar remarks to the girls, and of offensively touching one of them by grabbing them and rubbing his body on theirs. The Eleventh Circuit found this conduct was not severe enough to have a systemic effect of denying the girls equal access to their educational program as required to support a Title IX sexual harassment claim.

6

The court found that although the harassment was unwelcome and intimidating, and two of the girls said they faked being sick several times in order not to go to school, none of the girls told their parents until months after the alleged harassment began, none suffered a decline in grades, none of their teachers observed any change in their demeanor or classroom participation, and there was no physical exclusion or denial of access to facilities. Id. at 1288-89.

While both of the above cases deal with student-on-student harassment, the Court finds them very instructive here. The conduct complained of in this case, when considered in the light most favorable to Plaintiffs, includes: hanging a heart-shaped photograph of Jane among her classmate's pictures on the classroom door frame; and Huddleston repeatedly calling Jane his "girlfriend" and telling her that he loved her which on occasion caused Jane to blush. The comments by Huddleston may have occurred as frequently as twice per week during the school year. Further, Jane was no doubt teased by her peers as a result of Huddleston's conduct. Still, the Court finds that this conduct was not "so severe, pervasive, and objectively offensive" so as to constitute actionable sexual harassment under section 1983. Cf. Davis, 526 U.S. at 652.

While the Court recognizes that Huddleston's comments to Jane are not sanctionable teacher-student conversation, the Court cannot say the comments rise to the level of sexual harassment. The remarks were not overtly offensive in the sense that they were not vulgar or sexually explicit. Further, Jane's picture was hung

7

among those of her fellow classmates, and when Huddleston received the picture it had already been cut into the shape of a heart. Also, while there is no doubt Jane had difficulties adjusting to first grade at Westview school, and her parents repeatedly complained of these problems, neither Jane nor her parents ever specifically complained about Huddleston's conduct. Under these circumstances, the Court finds that no reasonable jury could find that Huddleston's conduct towards Jane was so severe, pervasive, and objectively offensive, so as to preclude Jane's participation in her educational program. Consequently, the Court will grant summary judgment in favor of Huddleston as to Jane's Equal Protection claim.

Even assuming Huddleston's conduct where found to be actionable sexual harassment, the Court finds that Huddleston would be entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Determining whether or not an individual's conduct violates "clearly established law" involves a two-step inquiry. First, the Court must determine whether the law was clearly established when the challenged conduct occurred. "In this Circuit, we ask 'whether the law was clear in relation to the specific facts confronting the public official when he or she acted.'" Second, the Court must evaluate the objective legal reasonableness of the defendants' conduct. "We inquire whether reasonably competent officials would agree on the application of

the clearly established right to a given set of facts." Biddle v. Martin, 992 F.2d 673, 675 (7th Cir. 1993) (quoting Apostol v. Landau, 957 F.2d 339, 341 (7th Cir. 1992)).  In this case, the Court finds that, considering the state of the law when Huddleston acted, reasonably competent teachers would disagree as to whether Huddleston's conduct violated Jane's Equal Protection rights. Consequently, Huddleston is entitled to qualified immunity as to Jane's Equal Protection claim.

In summary, the Court finds that no reasonable jury could find that Huddleston's conduct towards Jane violated her equal protection rights.  The Court also finds that Huddleston is entitled to qualified immunity as to Jane's Equal Protection claim.

**B.   Intentional Infliction of Emotional Distress claim**

As Plaintiffs acknowledge, there is no Illinois case "factually on all fours" with the facts of this case for the purposes of evaluating Plaintiff's intentional infliction of emotional distress claim.  Considering the novelty of the question at hand, the Court finds Plaintiff's intentional infliction of emotional distress claim is better suited for adjudication in state court.  Accordingly, the Court sua sponte declines supplement jurisdiction over this claim. See 28 U.S.C. § 1367(c)(1) (district court may decline to exercise supplemental jurisdiction if claim raises novel or complex issue of state law).

**C.   Motions to Strike**

Considering the above rulings, the pending motions to strike are denied as moot.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendant Gerald Huddleston's Motion for Summary Judgment [Doc. # 213] is GRANTED IN PART, and DENIED IN PART.  Summary judgment is granted in favor of Huddleston as to Plaintiffs' section 1983 claims.

IT IS FURTHER ORDERED that Defendant Gerald Huddleston's Motion to Strike the Affidavit of Annette Hale [Doc. # 238], and Motion to Strike Certain Paragraphs of the Affidavit of Jenna Hale [Doc. # 240] are DENIED AS MOOT.

IT IS FURTHER ORDERED that this Court declines supplemental jurisdiction over Plaintiffs' intentional infliction of emotional distress claims against Defendant Huddleston.


Entered this  12th  day of May, 2006.

s/ Joe B. McDade<br>
JOE BILLY McDADE<br>
United States District Judge